## STATE OF NEW JERSEY, PLAINTIFF, v. ISTAVAN SZATMARI, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided November 1, 1978.

*Mr. Gary Moore* for defendant.

*Mr. Wayne Mello,* Assistant Prosecutor, for the State (*Mr. Roger W. Breslin,* Prosecutor of Bergen County, attorney).

SCHIAFFO, J. S. C. Defendant Istavan Szatmari has been indicted for the murder of his wife. He has interposed the defense of insanity. Pursuant thereto he was examined by phychiatrists for the State and the defense. Both psychiatrists have expressed the opinion that defendant was legally insane at the time of the alleged commission of the offense.

The State now seeks an order permitting a second psychiatric examination of defendant. Defendant resists and through counsel indicates that he will not consent to the same. There is no dispute as to defendant's fitness to proceed with trial.

It is well settled that directing a defendant to submit to a psychiatric examination does not violate his constitutional rights against self-incrimination. *Evid. R.* 25(a) *N. J. S. A.* 2A:84A–19; *State v. Whitlow,* 45 *N. J.* 3 (1965).

Counsel concede that there are no cases in this jurisdiction that address themselves to this specific question, but both cite *State v. Whitlow, supra,* and *State v. Obstien,* 52 *N. J.* 516 (1968), which, although they differ somewhat factually, are guidance to this court in the resolution of this issue.

In *State v. Whitlow* defendant entered a plea of not guilty by reason of insanity, was examined by a psychiatrist of his

own choosing, and then refused to submit to an examination by a state-selected psychiatrist. The court stated that:

> When a defendant charged with crime pleads mental incapacity to stand trial or innocence by reason of insanity, obviously expert medical opinion is necessary both for the defendant and for the State . . . In the usual situation when counsel advises the State or the court of his client's mental incapacity for trial or for criminal responsibility, it may be assumed that defense psychiatrists have already examined defendant and furnished an expert opinion supporting the statement * * *. In such case manifestly the State should be permitted to have a *similar examination* made by psychiatrists of its choosing. [45 *N. J.* at 10–11; emphasis supplied]

The Supreme Court called the psychiatric interview a "crucial diagnostic tool" and stated that "the judicial aim must be to make it an effective instrument of justice." *Id.* at 20. The court's concern was not with the number of examining psychiatrists but with each side having the opportunity to make "similar examinations" of the person who raises an insanity defense. It also noted that, "Obviously a desirable objective in such matters is to eliminate as much as possible the so-called battle of experts at a hearing or trial." *Id.* at 20.

This concept of "similar examinations" by both sides was endorsed in *State v. Obstien, supra,* where defendant had been examined by a defense psychiatrist but had made no offer of an insanity plea nor raised any psychiatric issue. The court found no need to have the defendant examined by a state psychiatrist because defendant had no plans to use the defense examination. It noted, however, that if the defense did raise a psychiatric issue based on the examinations, the State would be entitled to an examination of defendant necessary to meet the defense offer of an insanity defense. If the State were not given the opportunity for a similar examination, the defense use of the psychiatric examination would be circumscribed within the parameters of the information and opportunity that was made available to the State. 52 *N. J.* at 527–528.

Although both sides have been accorded similar examinations in this matter, the prosecutor urges the court to enter an order for a second opinion by a psychiatrist of its choosing for the reason that one of its obligations is to make a determination as to whether it will accept defendant's claim of insanity or dispute it. He points out that an evaluation of the alleged facts in this case show that there is a history of infidelity on the part of the victim which was known to defendant and that defendant had carried the weapon he allegedly used to shoot his wife to the place where she resided. These factors, he contends, raise some question in his mind as to whether the plea of insanity should be disputed.

Resisting this application, defendant argues that the State's reason for seeking a second psychiatric opinion is merely to enhance its own position; that it is not entitled to more than one bite of the apple, since defendant has only retained one psychiatrist. He points out that the prosecution does not have a right to examine defendant until it obtains some advantage; its duty is to seek justice, not convict.

Although it is the duty of the prosecutor to seek justice and not merely to convict, he is also to use every legitimate means to bring about a just conviction, if one is warranted. *State v. Orecchio*, 16 *N. J.* 125, 140 (1954), citing *Berger v. U. S.*, 295 *U. S.* 78, 88, 55 *S. Ct.* 629, 633, 79 *L. Ed.* 1314, 1321 (1935) ; ABA Standards Relating to the Prosecution Function 1.1(c). To this end "he shall use all reasonable lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *N. J. S. A.* 2A:158-5.

Several United States Circuit Courts of Appeal have discussed the issue of the appointment of additional psychiatrists. The Fifth Circuit held that on the issue of competency to stand trial, under 18 *U. S. C. A.* § 4244[1],

---

[1]18 *U. S. C. A.* § 4244 provides that a motion for judicial determination of competency must be filed with the trial court and upon

the decision lies with the trial judge, not the psychiatrist, and that "the objective [of a psychiatric examination] is to give the judge the expert aid he requires, and if he reasonably thinks a second opinion would be helpful, he ought to be able to get it." *Birdsdell v. U. S., 346 F.* 2d 775, 777, n. 2 (5 Cir. 1965), *cert.* den. 382 *U. S.* 963, 86 *S. Ct.* 449, 15 *L. Ed.* 2d 366 (1965).

The Ninth Circuit followed the reasoning in *Birdsdell* that the number of psychiatric reports necessary to make a determination is within the trial judge's discretion. Their decision in *Ruud v. U. S., 347 F.* 2d 321, 323 (9 Cir. 1965) *cert.* den. 382 *U. S.* 1014, 86 *S. Ct.* 624, 15 *L. Ed.* 2d 528 (1966), also noted that psychiatry is not an exact science and that the opinion of a second psychiatrist "would not have aided the quest for certainty which we all seek in the elusive field of human intent or state of mind."

The Eighth Circuit in *United States v. Maret,* 433 *F.* 2d 1064 (1970), *cert.* den. 402 *U. S.* 989, 91 *S. Ct.* 1678, 29 *L. Ed.* 2d 155 (1971), adopted the position that questions concerning additional psychiatrists are matters within the sole discretion of the trial judge.

Whether an additional psychiatrist should be appointed in a particular case is within the sole discretion of the trial court. *Ruud v. U. S., supra.* The trial court here had nothing before it but the evidence of defendant's competency, and did not abuse its discretion in denying a third examination by an independent psychiatrist of defendant's choice at government expense. To permit such a practice would enable a defendant to sit by and condone an order for examination at a government hospital and then if the report did not suit him to demand another examination at government expense. The law does not require this, and for us to [do so] would be an invitation for every defendant to demand such a procedure without furnishing the trial court with any compelling reason therefor. [at 1067–1068]

---

such motion or upon similar motion in behalf of the accused, he is to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court.

██ The dilemma of the prosecutor appears genuine. His request is reasonable. As he points out, he seeks more aid satisfying himself as to whether this defendant did with malice aforethought and premeditation murder his wife. This is a sufficient compelling reason to grant his application. A just conviction is also justice.

In the final analysis it is the factfinding body that must make the ultimate decision, since psychiatric examinations are but "crucial diagnostic tools" to be used in the "effective administration of justice". *State v. Whitlow, supra.*

The newly enacted New Jersey Code of Criminal Justice, *L.* 1978, *c.* 95, approved August 10, 1978, effective September 1979, in 2C:4–5 provides for a court-appointed psychiatrist to examine a defendant with respect to fitness to proceed, but does not so provide where the question is insanity at the time of the offense. This enactment differs from earlier versions of the Code, most notably the *Final Report of the New Jersey Criminal Law Revision Commission on the New Jersey Penal Code* (Oct. 1971) (see 2C:4–5(a), 1971 Report), which provided for a court-appointed psychiatrist in both areas.

In the exercise of its discretion the court shall adapt the provisions of 2C:4–5, *L.* 1978, c. 95, apply them to the instant matter and appoint its own psychiatrist.

It is, therefore, ordered that this defendant shall be committed to New Jersey State Hospital at Greystone for a period not exceeding 30 days, to be examined by either the chief psychiatrist of that institution or a qualified psychiatrist designated by him. Psychiatrists retained by defendant and by the prosecution may be permitted to witness and participate in the examination and receive copies of the report of same. The report shall include (1) a description of the nature of the examination, (2) a diagnosis of the mental condition of defendant and (3) an opinion as to whether he was laboring under such a defect of reason, from disease of the mind, as not to know the nature and

quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong.

If the examination cannot be conducted by reason of the unwillingness of defendant to participate therein, the report shall so state and shall include, if possible, an opinion as to whether such unwillingness was the result of mental disease or defect. The examining psychiatrist may ask questions respecting the crime charged when such questions are necessary to enable formation of an opinion as to any relevant issue.